[613 NYS2d 616]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROSE FOSTER, Also Known as NAOMI CLAY, Appellant.

First Department, June 21, 1994

## APPEARANCES OF COUNSEL

*Jonathan Hager* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*Daniel S. Ratner* of counsel *(Peter D. Coddington* with him on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

## OPINION OF THE COURT

MURPHY, P. J.

The defendant has been convicted of two counts of robbery in the first degree after a jury trial at which the central issue was the reliability of the complaining witnesses' identification testimony.

The incident out of which the prosecution arises occurred on March 27, 1989. At that time, the complainants were accosted at gunpoint by two women and directed by them to turn over their jewelry, which they did. One week later, in an incident concerning which there is no record of any contemporaneous police report, the complainants claim to have encountered the perpetrators once again, this time in a completely different part of the City;[1] they reportedly pursued the perpetrators but ultimately failed to bring about their apprehension.

It was not until June 7, 1990, fully 14 months after the crime, that the complainants identified the defendant in a lineup as one of the perpetrators of the robbery. The lineup identifications, however, were suppressed by reason of the trial court's finding at a pretrial *Wade* hearing that the lineup had been suggestively composed.[2] Having found the lineup

---

1. The robbery occurred on Third Avenue between 162nd and 163rd Streets in the Bronx; the alleged second encounter with the perpetrators transpired at the Chambers Street subway station in lower Manhattan.

2. The defendant, who was 49 years of age at the time of the lineup, apparently stood out in the lineup by reason of the other lineup participants' relative youth. The court, on viewing a photograph of the lineup stated "[appellant's] appearance makes her stand out in this photograph to such a degree that it would not be a fair one".

identifications to have been tainted, the court continued the *Wade* inquiry to ascertain whether there was an independent source for in-court identifications of the defendant as one of those responsible for the March 1989 robbery. The defendant requested to absent herself from this phase of the *Wade* hearing, expressing, through counsel, the fear that her presence during the hearing, along with counsel at the defendant's table, would be highly suggestive, indeed little if at all different from a showup identification procedure. The defendant's application, however, was denied, the court expressing agreement with the now concededly incorrect statement of the Trial Assistant that it was "necessary for the witnesses to make an in-court I.D. at the time of this hearing to establish that *[sic]* independent source."[3]

The independent source phase of the *Wade* hearing concluded with a ruling permitting the complainants to make in-court identifications of the defendant as one of the two perpetrators of the March 1989 robbery. In so ruling, the court stated:

"I am well satisfied, having heard both of those witnesses, that both of them are candid, truthful and adequate with respect to their ability to remember the incident. *Not necessarily adequate or reliable with respect to their identification of this defendant. I make no judgment on that,* but I find that there was clearly a sufficient basis from the testimony of both of those witnesses to permit them to testify in court and to make an in-court identification based on their ability to recall the incident and the length of time it took, the lighting conditions et cetera.

"So, accordingly, this Court determines, as a matter of law, that the witnesses may testify that there was a sufficient independent source basis to allow them to testify, despite the taint the Court has already found occurred at the lineup, and despite any other inconsistencies that may have developed during their testimony.

· *"I find that they had an independent source, so that's why the exploration of the taint and the other inconsistencies doesn't truly bear on independent source. It bears on their reliabilities [sic] to positively and accurately identify their defendants, and is certainly a matter which I will permit*

---

3. The People concede on appeal that "Appellant correctly asserts that he *[sic]* was entitled to waive his *[sic]* presence at the independent source hearing".

*extensive exploration at trial, but it has nothing to do with the issue presented here today"* (emphasis added).

It is the People's contention that although the court expressed itself "inartfully", it nevertheless properly found that there was an independent source for the complainants to identify the defendant at trial. This, it seems to us, is a most generous, indeed practically fanciful, construction of the aforecited ruling. While the court may have purported to make an independent source finding, it is manifest that no such finding was made, at least none which could qualify as such under the law.

The fundamental purpose of the independent source phase of a *Wade* hearing is, of course, to determine, in a case in which there have been impermissibly suggestive police identification procedures, whether there nevertheless exists a sufficiently reliable basis for a witness's inculpatory identification of the defendant at trial. Delineating the purpose and scope of an independent source hearing the Supreme Court stated in *Manson v Brathwaite* (432 US 98, 114), *"reliability is the linchpin in determining the admissibility of identification testimony * * *.* The factors to be considered are set out in *Biggers.* 409 U. S., at 199-200. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Against these factors is to be weighed the corrupting effect of the suggestive identification itself"* (emphasis supplied).

Given the fact that the whole purpose of an independent source hearing is to assess the over-all reliability of a witness's identification of a defendant in a context in which there has been intervening suggestive conduct by the State, one can only wonder as to the point of such a hearing where, as here, the court expressly declines to make any judgment as to the reliability of the complainants' identifications. Indeed, respecting the reliability of the within complainants' identifications the court stated, "I make no judgment on that".

Plainly, the court seriously misconceived the reason for the independent source hearing which was not simply to ascertain whether the witnesses were able to recall the robbery, but whether they were able reliably to recall the defendant as a participant in the robbery. And, as noted, this is a finding

which was not merely omitted, it was one which the court explicitly declined to make.

Nor should it be thought, as the People suggest, that the court simply misspoke, rather than thoroughly misunderstood what it spoke about, for the court persisted in maintaining that the reliability of the complainants' identifications was irrelevant to a finding of independent source. Indeed, the court went so far as to state that it did not even need to consider the possibly enduring taint arising from the suggestive lineup held more than a year after the crime, because that went to the reliability of the identifications, a matter which the court asserted categorically had no bearing upon an independent source finding and which, in its view, was inappropriate for evaluation before trial: "I find that they had an independent source, so that's why the exploration of the taint and the other inconsistencies doesn't truly bear on independent source. It bears on their reliabilities [sic] to positively and accurately identify their defendants, and is certainly a matter which I will permit extensive exploration at trial, but it has nothing to do with the issue presented here today."

But, of course, contrary to the court's view, assessing the reliability of a witness's identification in a context of suggestive government conduct has everything to do with an independent source determination; it is in fact the essence of such a determination—that without which no finding of independent source can be made (see, Manson v Brathwaite, supra). To leave the assessment of the reliability of the identifying witnesses exclusively for trial defeats the basic purpose of the Wade hearing, and particularly of its independent source phase, which is precisely to assure that the jury will not have placed before it unreliable identification testimony.

Whatever the court purported to do, we think it evident that it did not make an independent source determination. This being the case, the matter must be remanded for a new trial to be preceded by a new independent source hearing. The Court of Appeals held in People v Dodt (61 NY2d 408, 418) that a "[d]efendant [is] entitled in advance of trial to a determination by a Trial Judge on the question of independent source", and finding that the defendant therein had been deprived of such a determination, reversed his conviction and remanded for a new trial and pretrial Wade hearing. And, although Dodt was a case in which the tainted out-of-court identification itself had been admitted at trial, it is now categorically clear that whenever suggestive identification

procedures have been employed and identification testimony is thereafter presented at trial without a determination of independent source, there must be a "fresh start", i.e., a new trial preceded by a new *Wade* hearing *(People v Burts,* 78 NY2d 20, 24).[4] Noting that identification evidence "is by its nature dynamic and subjective" and therefore "subject to distinctive constitutional and precedential protections and empirical concerns relating to reliability" *(supra,* at 23), the Court of Appeals has decisively rejected any posttrial remedy for the failure of a court to make a required determination of independent source before trial: "While perhaps efficient, such a procedural shortcut does not and cannot adequately remedy the defective procedure leading up to the admission of the still inchoately flawed evidence. The flaw in this instance cannot be retroactively cured because, simply put, the jury heard impermissible in-court identification evidence and the nature of this kind of defect cannot be sanitized after the irretrievable event has occurred. In such circumstances, nothing short of reversal and a new *Wade* hearing and a new trial will suffice". *(Supra,* at 23.)

Given the clarity of the holding in *Burts,* it is plain that it would not be appropriate either to remand this case for an independent source determination, or to make the determination ourselves on the basis of the evidence adduced during the nominal independent source hearing held by the trial court. The fact that evidence possibly demonstrative of independent source was adduced at that hearing, does not alter the circumstance that no legally cognizable independent source determination was made before trial, and absent such a pretrial determination, the identification evidence placed before the jury and upon which the jury doubtless relied in convicting the defendant remained inchoately flawed. It should also be noted that the fact-finding process itself did not go unaffected by the court's evident confusion as to what a finding of independent source entailed, and the scope of the hearing was accordingly unduly constricted.[5] Thus, even if *Burts* did not

4. In *Burts* "Although no evidence of the photo identification itself was admitted at trial * * * the unresolved and inchoate taint of the concededly improper photo procedure [could] not be retroactively cleansed by a posttrial hearing, nunc pro tunc, establishing independent source for already admitted and considered trial evidence" *(supra,* at 24).

5. The defendant citing various inconsistencies in the complainants' testimony (to which the court alluded in its independent source ruling) requested a continuance to call the detective who wrote up the complaint of

pose an insuperable obstacle to a posttrial determination of independent source, which it plainly does, it would not be appropriate to make such a finding on the basis of the present truncated record.

Although the failure of the trial court to make anything resembling an independent source determination in the circumstances here presented, which, as noted, involve an impermissibly suggestive lineup held 14 months after the crime, constitutes an entirely sufficient basis for reversal, it should also be noted that the risk of a wrongful conviction was further exacerbated by the trial court's now concededly erroneous refusal to permit the defendant to waive her right to be present during the *Wade* hearing. The courts of this State have, of course, recognized that a defendant may waive his or her right to be present at any material stage of the proceedings *(see, People v Anderson,* 16 NY2d 282; *People v Epps,* 37 NY2d 343, *cert denied* 423 US 999), including a *Wade* hearing *(Matter of Eric W.,* 182 AD2d 439; *People v Hubener,* 133 AD2d 233). And, as has been observed, a defendant may very well wish to make such a waiver in the context of a *Wade* hearing for "the *Wade* hearing itself may be highly suggestive and the presence of the defendant, easily recognizable in the courtroom, may serve to buttress a prior showup or lineup. By the time of the trial, the witness may very well have picked out the defendant on not one, but two highly suggestive occasions" *(People v Huggler,* 50 AD2d 471, 474; *see also, United States v Archibald,* 734 F2d 938, *mod* 756 F2d 223; *Boyd v Henderson,* 555 F2d 56, *cert denied* 434 US 927; *Sims v Sullivan,* 867 F2d 142, 145; *People v White,* 73 NY2d 468, 474, *cert denied* 493 US 859). This is, of course, precisely what has happened in the present case. Fourteen months after the crime and at least 13 and 1/2 months after the complainants allegedly viewed the perpetrator last, the defendant, undisputedly unknown to the complainants prior to the robbery, was displayed to them in a lineup the suggestiveness of which is not disputed, and a relatively short time thereafter again displayed to them, concededly improperly, in the highly suggestive setting of a *Wade* hearing. It simply cannot be said that the interposition by the State of two highly suggestive confrontations between

---

the March 1989 incident in order to demonstrate that the complainants' hearing testimony respecting the defendant's appearance was seriously at variance with what they had originally reported. The court denied the application stating "You have no conception of what independent source is, if you think it goes to independent source."

the defendant and her accusers at a time distant from the crime and near to the trial was harmless. On the present record, which as noted contains no finding of independent source, there is absolutely no way of discounting the possibility that the trial identifications of the defendant were attributable to the suggestive identification procedures rather than the complainants' independent recollection of the defendant as a participant in the robbery. Indeed, it might well be argued that given the over-all context in which the suggestive procedures occurred, no finding of independent source was possible.[6] At the very least, however, it is clear that the court in refusing to make any ruling upon the reliability of the identification evidence, and particularly, in expressly refusing to assess the reliability of that evidence "against the corrupting effect of the suggestive identification[s themselves]" *(Manson v Brathwaite, supra,* at 114), departed seriously from the "distinctive constitutional and precedential protections" instituted to insure the reliability of identification evidence *(People v Burts, supra,* at 23), and, in so doing, engendered a situation in which the risk of a miscarriage of justice was impermissibly high *(cf., People v Huggler, supra,* where the intervening confrontation one hour after the crime was deemed proper and there was, in any event, a legally sustainable finding of independent source).

Accordingly, the judgment of the Supreme Court, Bronx County (Lawrence J. Tonetti, J.), rendered October 16, 1991, convicting defendant, after a jury trial, of two counts of robbery in the first degree (Penal Law § 160.15 [4]) and sentencing her to concurrent indeterminate terms of 7½ to 15 years in prison, should be reversed, on the law, and the matter remanded for a new trial to be preceded by a new hearing on the issue of independent source.

---

6. The People, of course, have the burden at a *Wade* hearing of proving by clear and convincing evidence that any in-court identification of the defendant will not be traceable to suggestive police identification procedures *(People v Ballott,* 20 NY2d 600, 606). Here, given the relatively brief opportunity of the complainants to view the previously unknown perpetrators during the robbery (one of the complainants testified that she viewed the defendant only for a matter of seconds and the other that she did not recall how long she had viewed her but, in any case, was not observing the defendant attentively since she was worried about removing her jewelry) and the very substantial period intervening between the crime and the highly suggestive confrontations occurring proximate to the defendant's trial, it would be very hard to find that the People had met their burden.

SULLIVAN, KUPFERMAN and ASCH, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered October 16, 1991, reversed, on the law, and the matter remanded for a new trial to be preceded by a new hearing on the issue of independent source.