Matter of Aliya M. (2006 NY Slip Op 51952(U))

[*1]

Matter of Aliya M.

2006 NY Slip Op 51952(U) [13 Misc 3d 1223(A)]

Decided on October 12, 2006

Family Court, Queens County

Hunt, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through October 20, 2006; it will not be published in the printed Official Reports.

Decided on October 12, 2006

Family Court, Queens County
In the Matter of Aliya M., A Person Alleged to be a Juvenile Delinquent, Respondent.
 D-13171/06

Appearances of Counsel: Michael Cardozo, Corporation Counsel (Jessica Giambrone,
of counsel), New York City, for Presentment Agency. Lance K. Dandridge, Jamaica,
Law Guardian for respondent.

John M. Hunt, J.
By petition filed on July 19, 2006 respondent is alleged to have committed acts which,
were she an adult, would constitute the crimes of Robbery in the Second and Third Degrees,
Attempted Robbery in the Second and Third Degrees, Assault in the Second and Third Degrees,
Attempted Assault in the Second and Third Degrees, Grand Larceny in the Fourth Degree and
Attempted Grand Larceny in the Fourth Degree.
Claiming that proposed testimony concerning an observation of herself either at the
time or place of the commission of the charged crimes or upon some other time relevant to the
case is the product of an illegal arrest and detention, respondent seeks an order suppressing such
proposed evidence (see, Dunaway v. New York, 442 US 200 [1979]). Alternatively, respondent
alleges that the proposed testimony concerning the out-of-court identification must be suppressed
as the product of an unduly suggestive procedure (United States v. Wade, 388 US 218 [1967]).
Upon a motion to suppress evidence as the fruit of an unlawful arrest and detention, the
Presentment Agency has the initial burden of going forward to show the legality of the police
conduct while the respondent bears the ultimate burden of proving that the evidence should be
[*2]
suppressed (People v. DeStefano, 38 NY2d 640, 652; People v. Pettinato, 69 NY2d 653, 654;
People v. Arnau, 58 NY2d 27, 32 [1982], cert. denied 468 US 1217 [1982]; People v. Hofelich,
31 AD3d 882, 884 [2006]). Upon a motion to suppress potential identification evidence as the
product of an unduly suggestive identification procedure, the Presentment Agency has the initial
burden of demonstrating the lack of suggestiveness and respondent bears the ultimate burden of
proving that the procedure was unduly suggestive (People v. Chipp, 75 NY2d 327, 335 [1990], 
cert. denied 498 US 833 [1990]; People v. Ortiz, 90 NY2d 533, 537 [1997]; People v. Jackson,
98 NY2d 555, 558-559 [2002]; People v. Jones, 2 NY3d 235, 244 [2004]).
I
In order to determine whether the out-of-court identification of the respondent was
obtained as the direct result of an unlawful seizure of her person or whether the proposed
identification evidence resulted from an impermissibly suggestive identification procedure,
a hearing was conducted before the Court on October 5, 2006. New York City Police Detective
Brian McGuire was called by the Presentment Agency and was the sole witness at the hearing.
Detective McGuire, who has been a detective for ten years and who is presently assigned
to the 109th Precinct in Queens County, was on duty on March 21, 2006 and he was assigned
a case involving a robbery of Sarah Smith [FN1] which occurred "in the vicinity of Oak Avenue and
Kissena Boulevard in Queens County on March 17, 2006. Detective McGuire contacted Ms.
Smith and arranged to meet with her as part of his investigation. Ms. Smith met with Detective
McGuire at the station house later that day and according to him, "she explained that she was
[*3]
robbed by four female Blacks, approximately 15, 16 [or] 17 years old." Ms. Smith, who did
not provide the detective with any further descriptive information concerning the perpetrators,
also informed McGuire that after she had been robbed on March 17th, she had been brought to the
precinct by police officers and as "she was leaving the precinct, that she did identify one of the
perpetrators who was arrested for a separate incident." According to Detective McGuire, he
proceeded to visit the records section of the precinct and he learned that "there was one arrest
made with regards to an assault by the juvenile squad" on March 17, 2006 and that arrest
involved a person named "Tavia A." who he subsequently learned was a student at Intermediate
School 237, the same school attended by the respondent and two other co-respondents.
Following further investigation, which included an arrest of Tavia A. on April 4, 2006
and a meeting with Tavia A. and her mother at which they refused to answer questions "after 
Miranda" warnings were administered, Detective McGuire went to respondent's junior high
school on May 4, 2006 and although he did not have an arrest warrant, he "picked up Aliya M.
and brought her back to the 109th Precinct." McGuire explained that he decided to "pick up" the
respondent based upon "[t]he investigation from the initial arrest and after interviewing the
school safety officers and speaking with the school principal, we were able to get a list of names
of people that were friends" of Tavia A., who included Quantasia G., Aliya M. and Crystal M.
"[a]nd from there we started our investigation. We brought these people in to speak to them to
see if they had any involvement and also to conduct a photo array." Detective McGuire indicated
that he obtained photograph of Aliya M. after she and two of her co-respondents were removed
from their school by McGuire and another detective at approximately 1:00 P.M. on May 4, 2006
[*4]and taken to the precinct in a police vehicle. A school guidance counselor drove behind the
police vehicle to the precinct. McGuire testified that at some point the respondent was informed "that we would be taking a photograph of her and putting it in the photo array for identification
purposes."
According to Detective McGuire, none of the three students were under arrest at the time
they were removed from their school with the permission of school authorities and then
transferred to the precinct by police vehicle. When asked whether respondent "was given a
choice" whether or not to accompany the detectives to the precinct, McGuire stated that "I asked
her to come. I asked her would you come back to the precinct regarding the investigation" and
"she had no problem coming back with us." After arriving at the precinct, McGuire took a
photograph of the respondent and he then placed it into a photographic array which contains five
other photographs of apparently teenage African American females. McGuire testified that the
filler photographs were randomly selected from "thousands of photographs" from "prior arrests"
that are stored at the precinct "just in case we need it" and that the photograph of the suspect and
the fillers are placed in an array folder for viewing by a victim or eyewitness.
Subsequent to photographing the respondent and assembling a photographic array which
contained her photograph, Detective McGuire left the precinct where respondent and the two
other suspects remained at the request of the officers and at approximately 2:10 P.M. he met with
Ms. Smith and asked her to view the array folder which contained six photographs and to inform
him whether she recognized any of the individuals in the array. According to McGuire, the
victim pointed to respondent's photograph and identified her as one of the individuals who
had robbed her. McGuire then returned to the precinct and he "explained to Aliya M. and
her mother" who had arrived at the precinct "that she was positively identified in the photo array
[*5]and that I'm placing her under arrest for robbery." McGuire than processed "arrest paperwork"
and issued a Family Court appearance ticket to the respondent and her mother and she "was
released to the custody of her mother."
II
In this case the Court must first consider whether Detective McGuire violated the Fourth
and Fourteenth Amendments when he removed the respondent from her school on May 4, 2006,
transported her to the 109th Precinct and detained her there and took her photograph and placed
the photograph in an array for display to the victim of the alleged robbery.
The decision in People v. DeBour (40 NY2d 210 [1976]), in which the Court of Appeals
set out a four-tiered framework representing the gradation of permissible warrantless police
encounters with citizens in a public place and which correlates the degree of the officer's
objectively credible belief with the permissible scope of the officer's intervention, is applicable
to this case (People v. Hollman, 79 NY2d 181, 195 [1992]; People v. Leung, 68 NY2d 734, 736
[1986]; People v. McIntosh, 96 NY2d 521, 526 [2001]; People v. Pines, 99 NY2d 525, 527
[2002]; People v. Moore, 6 NY3d 496, 498-499 [2006] [DeBour is an integral part of our
jurisprudence]).
It is well-established as a matter of federal and state constitutional law that police-civilian
encounters undertaken for the purpose of obtaining information do not constitute seizures and
that such encounters ordinarily do not implicate the Fourth Amendment (Terry v. Ohio, 392 US 1
[1968]; California v. Hodari D., 499 US 621, 626 [1991]; Hiibel v. Sixth District Court of
Nevada, 542 US 177, 185-186 [2004]; People v. Bora, 83 NY2d 531, 534 [1994]; Matter of
Jamaal C., 19 AD3d 144, 145 [2005]). However, under the facts of this case, there can be little
[*6]doubt that the respondent was seized and detained where she and two fellow students were removed from their school by two police detectives in the middle of the school day, with the
concurrence of school officials who were entrusted with the care of the children, and then
transported by police vehicle to a police precinct where they were photographed and confined in
a room together pending further investigation by the officers (see, Dunaway v. New York, at 207; 
People v. Cantor, 36 NY2d 106, 111 [1975]; People v. Martinez, 80 NY2d 444, 447 [1992]; 
People v. Bora, at 534; People v. Ocasio, 85 NY2d 982, 984 [1995]). A reasonable person of
respondent's age would have believed, under these circumstances, that the detectives' conduct
was a significant limitation on his or her freedom (People v. Cantor, at 113; People v. Bora, at
535; People v. Rosa, 30 AD3d 905, 907 [2006]; Kaupp v. Texas, 538 US 626, 629-630 [2003]),
and the Court therefore finds that respondent was seized as of the time the detectives removed
her from the school building.
There is no dispute that Detective McGuire took respondent into custody without a
warrant. While warrantless arrests of juveniles are authorized by statute (Fam. Ct. Act §305.2
[2]), the legality of the detective's actions turns upon whether the seizure of respondent was
supported by either reasonable suspicion or probable cause. The police may stop and detain
an individual where there is reasonable suspicion, which has been defined as "that quantum of
knowledge sufficient to induce an ordinarily prudent and cautious person under the circum-
stances to believe that criminal activity is afoot" (People v. Martinez, at 448; Matter of William
II., 98 NY2d 93, 98 [2002]; People v. Woods, 98 NY2d 627, 628 [2002]), and officers may,
of course, effect a warrantless arrest where there is probable cause to believe that an offense has
been or is being committed (People v. DeBour, at 223; People v. Bigelow, 66 NY2d 417, 423
[1984]; People v. Hicks, 68 NY2d 234, 238 [1986]; People v. Yancy, 86 NY2d 239, 245 [1995];
[*7]People v. Maldonado, 86 NY2d 631, 635 [1995]).
The lawfulness of the police conduct must be justified at its inception and it cannot be
based upon information subsequently obtained by the officer (People v. DeBour, at 215-216; 
People v. McIntosh, at 527; People v. William II., at 98; People v. Wheeler, 2 NY3d 370, 374
[2004]; People v. Moore, at 498). Based upon the record before the Court, it is clear that
respondent's seizure at her school by Detective McGuire and his partner was not based upon
probable cause, nor was the information known to the officers at the time of the seizure sufficient
to constitute reasonable suspicion to believe that respondent was committing or had committed a
crime.
On March 17, 2006, Sarah Smith was allegedly robbed and assaulted by four teenage
females whose identities were not known to her. After the alleged incident, Ms. Smith was
taken to the 109th Precinct by police officers and, on her way out of the precinct, she happened to
observe Tavia A., one of the people she believed had robbed her earlier in the day. The case was
then assigned to Detective Brian McGuire of the 109th Precinct for investigation. McGuire met
with Sarah Smith on March 21, 2006 and she told him that on March 17, 2006 she had been
robbed by "four female Blacks". Ms. Smith does not appear to have known the identities of
the perpetrators nor did she give McGuire any physical description of her assailants. She did
however inform McGuire that as she was leaving the precinct on the date of the incident she
happened to see one of the females who has accosted her earlier that day. Detective McGuire
then reviewed the juvenile arrests and incidents involving the 109th Precinct that day and he
learned that there was an incident involving a juvenile named Tavia A. who is a student at
Intermediate School 237. Detective McGuire then was away from work for several weeks and
[*8]when he returned he visited the school to interview school safety personnel and the school
principal. According to McGuire's testimony, the school principal told him that Tavia A. was a
student at I.S. 237 and that she frequently "got into trouble" with three other people who were
then or formerly students at the school, Quantasia G., Aliya M. and Crystal M.
Without speaking with Ms. Smith to learn whether she could confirm that the respondent,
Quantasia G. and Crystal M. were possibly involved in the incident and without undertaking any
additional investigation, as reflected by the fact that a fifth possible suspect, Brianna W., who
was also taken into custody by police was ultimately released without being charged when the
officers learned subsequent to her seizure that she had been outside of New York State at the
time of the alleged robbery and assault, McGuire decided to remove respondent and two other
students from their school. Detective McGuire candidly conceded that these actions were taken
for the express purpose of obtaining their photographs for preparation of photographic arrays for
viewing by Ms. Smith. The action taken by the officers was unsupported by objective credible
information that would have constituted reasonable suspicion or probable cause. The illegal
seizure and detention not only made the identification by Ms. Smith possible, but it was done
with the intent to obtain respondent's photograph so an identification could be obtained to
generate probable cause for her arrest (see, People v. Gethers, 86 NY2d 159, 161 [1995]).
Therefore, because the seizure of the respondent was unlawful at its inception, the out-of-court
identification obtained from the photographic array must be suppressed as the direct product of
that unlawful seizure (People v. Stith, 69 NY2d 313, 317 [1987]; People v. Turriago, 90 NY2d
77, 86 [1997]; Wong Sun v. United States, 371 US 471, 488 [1963]).
While respondent's Dunaway motion is granted the proceedings must be continued so
[*9]that the Presentment Agency can establish Ms. Smith's ability to identify the respondent as
one of the perpetrators independently of the police conduct in this case (People v. Gethers, at
161; United States v. Crews, 445 US 463, 474 [1980]; People v. Jones, 2 NY3d 235, 242 [2006]; 
People v. Arnau, at 33).
This constitutes the decision, opinion and order of the Court.
E N T E R:
__________________________________
JOHN M. HUNT
Judge of the Family Court
Jamaica, New York
Dated: October 12, 2006
Footnotes

Footnote 1:The names of the respondent, co-respondents and the victim have been changed in the
interest of confidentiality.