Matter of Aliya M. (2007 NY Slip Op 50188(U))

[*1]

Matter of Aliya M.

2007 NY Slip Op 50188(U) [14 Misc 3d 1227(A)]

Decided on February 1, 2007

Family Court, Queens County

Hunt, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 1, 2007

Family Court, Queens County
In the Matter of Aliya M., A Person Alleged to be a Juvenile Delinquent, Respondent,
D-13176/06

Michael A. Cardozo, Corporation Counsel (Jessica Giambrone of counsel), New
York City for Presentment Agency. Lance Dandridge, Jamaica, Law Guardian.

John M. Hunt, J.
By petition filed on July 19, 2006 respondent is alleged to have committed acts which,
were she an adult, would constitute the crimes of Robbery in the Second and Third Degrees,
Attempted Robbery in the Second and Third Degrees, Assault in the Second and Third Degrees,
Attempted Assault in the Second and Third Degrees, Grand Larceny in the Fourth Degree and
Attempted Grand Larceny in the Fourth Degree.
By decision and order dated October 12, 2006 this Court granted respondent's motion
for an order suppressing potential evidence concerning an out-of-court identification of the
respondent as the fruit of an unlawful arrest and detention and the case was set down for the
Presentment Agency to prove that the eyewitness had a basis for identifying respondent at the
fact-finding hearing independent of the suppressed police-arranged identification procedure
(Matter of Aliya M., 13 Misc 3d 1223[A], 2006 NY Slip Op 51952[U], at *4-5; see, People v.
Burts, 78 NY2d 20 [1991]; People v. Moses, 32 AD3d 866, 867-868 [2006]).[FN1]
[*2]
The hearing upon the issue of independent source was conducted before this Court on
December 15, 2006. The sole witness at the hearing was the alleged victim, Sarah Smith.[FN2]
Sarah Smith testified that on March 17, 2006 she was standing alone in the vicinity
of Oak Street and Kissena Boulevard in Queens County at approximately 3:00 P.M. and
"waiting for friends." As she was standing on the street, "[a] group of kids, about twenty of them,
were walking past me [and] nothing happened . . . I really didn't look at any of them." Moments
later, Ms. Smith "heard some girls sa[y] mind your business'" and she then "got hit on the
right side of her face" by "a fist" by an "African American" individual whose face she did not
see, but whose arm she did see just before the punch landed, allowing her to identify the race of
that individual. After she was punched in the face, Smith "fell to the ground" and she ended up
prone on her back. While she was on her back on the ground "I turned around and I see the girl.
She was about to kick me and three others came." Smith was surrounded by these four
individuals who were "about a foot away" from her and the "[o]ne who hit me in the face was on
my right side, there was one in front of me and there were two on the left of me." Smith stated
that from her prone position she had a clear view of the "lower body" of the three individuals
situated to either side of her, a clear view of the face of the person situated to her right and one of
the people situated to her left, as well as a full view of the body, including the face, of the person
[*3]
standing in front of her.
When asked to describe the person who had punched her in the face, the witness testified
that her assailant was "[t]all, dark, kind of husky [with] droopy eyes. I really saw her eyes when
I was on the ground" and she testified that this person had "dark brown" eyes. Of the other three
people who were surrounding her, Smith recalled that the person directly in front of her was
a black female who "was short . . . she had squinty eyes and she had braids" as well as "dark
brown eyes", and the two people to her left side "both [had] around the same skin tone" and were
both about the same height as she was on the date of the incident, and Smith recalled that one of
these two people "had big eyes" which were also "dark brown" in color. In addition, Ms. Smith
observed that one of the assailants was wearing red outer clothing and another black outer
clothing, which were described as a "[s]hirt or a jacket." While lying on the ground, Smith was
"kicked around" by the three people situated on either side of her while the person situated in
front of her "was picking through my pants pockets". While Smith attempted to cover her face
for protection while she was being kicked, she observed the three assailants to her left and right
side kicking her "all over my body." According to Ms. Smith, the four perpetrators fled together
when a teacher from her school came upon the scene while driving. As a result of the incident,
Smith suffered physical injury and she lost her cellular phone and her gold earrings which had
been removed from her ears during the fracas.
Ms. Smith said that the incident was brief but that she had an opportunity to clearly view
the face and body of three of her four assailants, although she indicated that she was able to recall
the faces of all four of the individuals who had attacked her when she was shown pictures by the
[*4]
police. While Smith stated that she did not have a current recollection of the face or body of one
of the individuals who had been situated to her left while she had been lying on the ground, she had been able to identify that person when asked to do so by the police. When asked whether she
could identify anyone present in the courtroom as one of her assailants, Ms. Smith stated that the
respondent, Aliya M., was one of the four people who had attacked her on March 17, 2006. She
further indicated that respondent had been one of the individuals who was situated to her left and
who kicked her while she was on the ground. According to Ms. Smith, she noticed respondent's
eyes, which she described as "round and big" during the incident and was able to presently
identify respondent based upon that past recollection.
A
There were two police-arranged identification procedures conducted in this case, only
one of which resulted in a positive identification which led to respondent's arrest.
Ms. Smith met with police officers on March 17, 2006 and they brought her to a
Dunkin' Donuts store near the scene of the incident to see if she could identify any of the
perpetrators. According to Ms. Smith, she observed fifteen people inside of the store, including
the four people who had attacked her, but she did not identify them to the officers who were
accompanying her "because I was scared" and because she was still "in shock" as a result of
the incident. However, moments later, Smith testified that "I pointed out one girl to the officer
that day . . . I told them that she was wearing [a] partially red jacket, part of her jacket was red,
and I told them that I believe she was one of the girls who kicked me." According to Smith, an
officer then proceeded to question this individual, but no arrest was made and the officer "let her
go."
On March 21, 2006, Ms. Smith met with New York City Police Detective Brian McGuire
[*5]
who had been assigned to investigate the incident of March 17, 2006. As this Court found in the Dunaway hearing (see, Dunaway v. United States, 442 US 200 [1979]), Smith met with
Detective McGuire at the 109th Precinct on March 21st and she informed him that on March 17th,
she had been attacked and robbed by four black female teenagers. Smith testified at both hearings
that she was unable to give Detective McGuire further descriptions of her assailants when they
met on March 21st, although she did inform the Detective that on the date of the incident she was
at the precinct and that see did one of her assailants at the precinct as she was leaving (Matter of
Aliya M., 2006 NY Slip Op 51952[U], at *1). After obtaining photographs of the possible
suspects, Detective McGuire met with Ms. Smith at a location other than the precinct and he
displayed a photographic array which contained "head shot" photographs of the respondent and
five "fillers" (id., at *2). According to the testimony elicited at the Dunaway hearing, Ms. Smith
did not hesitate in pointing out the respondent and indicating that she had been one of the four
people who had attacked her on March 17th (id.).
II
Where testimony concerning an out-of-court identification is suppressed due to a
violation of a defendant's constitutional rights, it is incumbent upon the prosecution to establish
an independent source for the identification of the defendant by a witness.[FN3]
In the context of identification evidence, independent source means identification
[*6]
evidence which is independent of the illegality which resulted in the exclusion of the proposed
identification testimony obtained through an impermissibly suggestive out-of-court identification
procedure or, as in this case, obtained as a result of an unlawful seizure and detention of a person
(People v. Ballott, 20 NY2d 600, 606 [1967]; People v. Rahming, 26 NY2d 411, 416 [1970];
People v. Ortiz, 42 NY2d 834 [1977]; People v. Dodt, 61 NY2d 408, 417 [1984]; People v.
Young, 7 NY2d 40, 44 [2006]).
Thus, where testimony concerning an out-of-court identification procedure has been
suppressed due to the suggestiveness of the identification procedure, the prosecution is required
to establish by clear and convincing evidence that the in-court identification to be made by the
witness is based upon the witness's independent observation of the perpetrator (People v. Ballott,
at 606-607; People v. Rahming, at 417; People v. Young, at 44; People v. Radcliffe, 273 AD2d
483, 484 [2000]; People v. Williams, 222 AD2d 149, 152 [1996], lv. denied 88 NY2d 1072
[1996]; People v. Webster, 248 AD2d 738 [1998], lv. denied 92 NY2d 908 [1998]; People v.
Adelman, __ AD3d __, 2007 NY Slip Op 00660).[FN4] Similarly, where the out-of-court identifi-
cation is suppressed as the fruit of an unlawful seizure and detention, the prosecution is required
to establish that the witness's proposed in-court identification has a basis independent of the
unlawful police action which resulted in the suppression of testimony concerning the out-of-court
identification (see, People v. Harris, 77 NY2d 434, 438 [1991]; People v. Jones, 2 NY3d 235,
[*7]
243-244 [2004]; People v. Dodt, at 417; People v. Gethers, 86 NY2d 159, 163 [1995]; People v.
Kennedy, 282 AD2d 759, 760 [2001]; People v. Robinson, 8 AD3d 95 [2004]).[FN5]
The issue therefore, is whether Sarah Smith has a basis to make an in-court identification
of the respondent independent of the identification obtained subsequent to the illegal seizure and
detention of the respondent by Detective McGuire several days after the incident.
Although courts have been reluctant to adopt a formal protocol defining the process by
which a witness makes an identification of another person (e.g., People v. Lee, 96 NY2d 157,
162 [2001]; People v. Young, 7 NY3d, at 44-45; People v. Drake, 7 NY3d 28, 33 [2006]
[discussing use of expert testimony to explain process of eyewitness identification]), it has been
stated that "[a] victim's in-court identification of the accused has three distinct elements. First,
the victim is present at trial to testify as to what transpired between her and the offender, and to
identify defendant as the culprit. Second, the victim possesses knowledge of and the ability to
reconstruct the prior criminal occurrence and to identify the defendant from her observations of
him at the time of the crime. And third, the defendant is also physically present in the courtroom,
so that the victim can observe him and compare his appearance to that of the offender" (United
States v. Crews, 445 US 463, 471 [1980]; see also, Manson v. Brathwaite, 432 US 98, 114-115
[*8]
[1976]; Neil v. Biggers, 409 US 188, 199-200 [1972]).[FN6]
Ms. Smith testified credibly before this Court and without any apparent motive for
fabrication. She testified that she was attacked by four black female teenagers near her school
on the afternoon of March 17, 2006. One of the four assailants punched her on the right side of
her face and she fell to the ground, eventually ending up prone on her back. From her vantage
point on the sidewalk, Smith observed that the person who punched her in the face was a black
female teenager "who was about to kick me" and she also observed three other individuals,
whom she described as black female teenagers, run towards the scene. Now surrounded by these
four individuals, who were no more than a foot away from her, Smith was clearly able to see the
lower portions of the body of all four of her assailants, as well as the face of the person standing
to her right who was also the person who had punched her in the face moments ago. Smith also
had a clear view of the face of the person who was standing in front of her as well as the face of
one of the two individuals standing to her left.
According to Ms. Smith, although she was scared, she was able to take note of certain
physical characteristics of the three assailants she could clearly see. The person to her right who
had punched her in the face was "[t]all, dark, kind of husky [with] droopy eyes" that were "dark
brown". The person standing in front of her "was short [with] squinty eyes and she had braids"
[*9]
and her eyes were "dark brown" in color. As for the two individuals standing to her left, Smith
recalled that they were about the same height as she is, that one of them had "big eyes" which
were "dark brown" in color. Smith was also able to recall that one of her assailants was wearing a
red jacket and one was wearing a black jacket. As the three individuals to her sides began to kick
her all over her body, the person who had been standing in front of her proceeded to rifle through
her pants pockets. After the attack stopped when a teacher drove upon the scene, Smith noticed
that her cellular phone, which had fallen from her hand during the incident, was missing, and that
her gold earrings had been removed from her ears and they were also missing.
According to Smith, she had a sufficient opportunity to view the faces of three of the four
individuals who had attacked her on March 17th and she was also able to recall the face of the
fourth individual when she was shown photographs by Detective McGuire on March 21st. During
her testimony at the hearing, Ms. Smith made a positive and unequivocal identification of
respondent as one of the people who attacked her on March 17th and further indicated that the
respondent had been one of the people to her left who had kicked her while she was on the
ground and her property was being taken. Smith testified that during the incident she had taken
particular notice of respondent's "round and big eyes" which were "dark brown" in color.
Based upon the evidence adduced at the hearing, the Court finds that Sarah Smith
exhibited no difficulties in describing with exacting detail the incident that occurred on March
17, 2006 including the actions of the four individuals who attacked her. In particular, she had an
opportunity to view the respondent during the incident as established by the fact that she
observed respondent's general physical appearance and notably, that respondent had big and
[*10]
round eyes which were dark brown. Smith also observed where respondent was situated during
the attack and she was able to recall that respondent participated in kicking her while she was flat
on her back on the sidewalk. Thus, based upon Smith's observations at the time of the incident, her ability to clearly recall what transpired during the incident, including the role played by each
of the four assailants, and her ability to compare her recollection of respondent's appearance on
March 17th to her appearance in court on the date of the hearing resulting in an unequivocal
identification of respondent as one of the assailants, the Court finds that the Presentment Agency
has met its burden of establishing an independent source for Smith's in-court identification of
respondent by clear and convincing evidence (People v. Radcliffe, at 484; People v. Williams, at
153-154; People v. Webster, at 738; People v. Robinson, at 95; People v. Kilpatrick, 28 AD3d
360, 361 [2006], lv. denied 7 NY3d 791 [2006]; Matter of Elias R., 33 AD3d 325, 326 [2006]; 
People v. Adelman, __ AD3d, at __, 2007 NY Slip Op 00660, at *1).[FN7]
Accordingly, the victim's in-court identification of the respondent is admissible at the
fact-finding hearing and the hearing shall proceed to conclusion as scheduled.
This constitutes the decision, opinion and order of the Court.
E N T E R:
[*11]
_________________________________
JOHN M. HUNT
Judge of the Family Court
Dated: Jamaica, New York
February 1, 2007

Footnotes

Footnote 1:In the earlier decision, the Court determined that respondent had been seized and detained unlawfully by a New York City Police Detective and that an out-of-court identification
obtained as the direct result of that unlawful arrest was inadmissible at trial (Matter of Aliya M.,
2006 NY Slip Op 51952[U], at *4).

Footnote 2:Because Ms. Smith was to be the only prosecution witness called at the independent
source hearing as well as the fact-finding hearing, the Court conducted a consolidated hearing
with the understanding that separate rulings for each hearing would be rendered (see, Civil Practice Law and Rules §4011).

Footnote 3:Testimony concerning an out-of-court identification of a defendant may be suppressed for a variety of reasons. For example, such evidence may be suppressed as derived from an illegal
arrest and detention (Dunaway v. New York, 442 US 200), or as obtained in violation of a defendant's constitutional right to counsel (People v. Massie, 2 NY3d 179, 181 [2004]), or as obtained by means of an impermissibly suggestive identification procedure which is violative of due process (United States v. Wade, 388 US 218, 242 [1967]; People v. Chipp, 75 NY2d 327, 335 [1990], cert. denied 498 US 833).

Footnote 4:In People v. Foster (200 AD2d 196 [1994], app. withdrawn 83 NY2d 1003 [1994]), the
Court stated that "[t]he fundamental purpose of the independent source phase of a Wade hearing
is . . . to determine, in a case in which there have been impermissibly suggestive police identifi-
cation procedures, whether there nevertheless exists a sufficiently reliable basis for a witness's
inculpatory identification of the defendant at trial" (200 AD2d at 199).

Footnote 5:As the Court explained in People v. Jones (2 NY3d 235), the exclusionary rule does not
automatically require suppression of evidence simply because there was illegal police activity
(id., at 241). Rather, because "[t]he exclusionary rule generates substantial social costs" (Hudson
v. Michigan, __ US __, 126 SCt. 2159, 2163 [2006]; see, People v. Young, 55 NY2d 419, 425
[1982], cert. denied 459 US 848 [1992]; People v. Burr, 70 NY2d 354, 362 [1987], cert. denied
485 US 989 [1988]), exclusion of evidence is required only where there is a causal connection or
nexus between the illegal conduct and the evidence in question (see, People v. Burr, at 362-363;
People v. Jones, at 241-242).

Footnote 6:In Neil v. Biggers (409 US at 199-200) and Manson v. Brathwaite (432 US at 114), the Supreme Court set forth several essential factors which are relevant in determining whether a witness's identification testimony is reliable. Those factors are: the opportunity of the witness to view the perpetrator at the time of the crime; the witness's degree of attention during the transaction or incident; the accuracy of the witness's prior description of the perpetrator; the level of certainty at the time that the description was given or the identification was made; and the length of time between the crime and the time that the identification was made or the identification procedure was conducted.

Footnote 7:Although there was a police-arranged area canvass conducted on March 17, 2006 (People v. Dixon, 85 NY2d 218, 222-223 [1995]) and Ms. Smith testified that she saw her assailants in a group of approximately 15 people inside of a Dunkin' Donuts store near the scene of the incident, she testified that she did not identify them because she "was scared" and "in shock". This, of course, does not conclusively establish that Smith did not have sufficient opportunity to observe her assailants during the incident. Upon this record, such a determination would be based on mere speculation, especially where the officer who conducted the area canvass has never testified at any stage of the hearings.