■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER G. LETENDRE, Appellant. [696 NYS2d 538] —Graffeo, J. Appeal from a judgment of the County Court of St. Lawrence County (Nicandri, J.), rendered June 8, 1998, upon a verdict convicting defendant of three counts of the crime of arson in the third degree.

Defendant's prior conviction on three counts of arson in the third degree, in connection with three fires that occurred on April 9 and May 10, 1996, was reversed by this Court in the interest of justice, and a new trial ordered, due to the failure to redact certain information regarding uncharged crimes and bad acts in defendant's written statement prior to its admission in evidence (*see,* 247 AD2d 796). On remittal, defendant moved to suppress his statement and certain property seized without a warrant. After conducting a *Dunaway* hearing, County Court denied the motion, finding that the police had probable cause to take defendant into custody on the first and third counts of the indictment. Defendant now appeals his conviction after his second jury trial.

Defendant's primary assertion on this appeal is that the People failed to sustain their burden of establishing probable cause for defendant's warrantless arrest in connection with two fires which occurred on the same night in the Village of Hermon, St. Lawrence County. We disagree and find that the evidence presented at the *Dunaway* hearing was "collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it [was] reasonably likely that such offense was committed" and that defendant committed it (CPL 70.10 [2]; *see, People v Lynch,* 178 AD2d 779, 781, *lv denied* 79 NY2d 949). Recognizing that a probable cause assessment need not rise to the level of evidence sufficient to support a conviction or prove a prima facie case (*see, People v Lynch, supra,* at 781), here the confluence of circumstances and information obtained during the investigation from corroborating witnesses regarding defendant's ability to access the two premises, his activities and demeanor immediately prior to the discovery of the first fire, his reactions when confronted by acquaintances, his previous remarks regarding the setting of fires, and his arrest record for arson provided probable cause (*see, e.g., People v Thompson,* 175 AD2d 189, *lv denied* 79 NY2d 865) for the police to consider defendant a suspect in the two fires and to take him into custody.

At the *Dunaway* hearing, Detective Sergeant Augustus Burns from the St. Lawrence County Sheriff's Department testified for the People, along with two other witnesses. Burns stated that when he arrived at the scene of the first fire at an automotive garage during the early morning hours of May 10, 1996, several people informed him that defendant had been intoxicated at a nearby bar that evening and after arguing with other patrons, he had departed about a half hour before the first fire was discovered. One patron indicated that he observed defendant walking toward the garage. Another patron relayed that defendant may have been present in the building at the time of the fire as he planned to spend the night in the garage and knew how to gain entry to the building. Burns learned from the owner of the garage that defendant had commented about his ability to set fires in an earlier conversation at the garage. During Burns' second conversation with Michael McRobbie, the individual with whom defendant resided, McRobbie confirmed that defendant had previously bragged about setting fires in New Hampshire and elsewhere. This conversation prompted Burns to obtain defendant's criminal history which revealed two arrests for arson in New Hampshire.

Burns further testified that approximately two hours after the first fire, he was notified of the occurrence of a second fire at a vacant house situated on the same street as the garage and owned by the same person. Upon arriving at the scene, the individual who owned the garage revealed to Burns that several weeks earlier defendant had agreed to purchase the property and that defendant had a key to the property. McRobbie subsequently contacted Burns to advise him of defendant's whereabouts after he had a confrontation with defendant regarding the garage fire. Soon thereafter, Burns located defendant at an acquaintance's residence, dressed in "street clothes" which did not match the description of defendant's garments given by the bar patrons. The homeowner had informed Burns that defendant had changed his clothes when he arrived, but when Burns asked about his attire defendant became upset and insisted that he was wearing the same clothes the entire night. After defendant was taken into custody, defendant's acquaintance brought Burns to a trailer where he identified the garments worn by defendant at the time of his arrival, which matched the bar patrons' description of the clothing worn by defendant.

It is well settled that "probable cause may be provided through hearsay information" where the individuals providing the information are reliable and have a basis for their knowl-

edge (*People v Chase*, 85 NY2d 493, 501; *see, People v Parris*, 83 NY2d 342, 346-347). Here, the various witnesses with a history of past association with defendant provided Burns with information regarding defendant's prior knowledge and means of access to both buildings, location in close proximity to the garage shortly before the fires, inebriated condition and argumentative disposition earlier that evening, previous remarks about setting fires, prior arrest history, and the plan to purchase the house damaged in the second fire. In light of the facts gathered by Burns prior to taking defendant into custody, and based on his knowledge and experience, we find that it was objectively reasonable for Burns to have concluded that defendant had committed a crime (*see, People v Lynch*, 178 AD2d 779, *supra*; *People v Hughes*, 124 AD2d 344, *lv denied* 69 NY2d 828), especially as there were no inconsistencies in the information obtained during the course of the investigation. Based upon the foregoing, we determine that there is no reason to disturb County Court's denial of the suppression motion.

Defendant next asserts that County Court committed error in failing to redact two portions of his written statement which referred to his actions when he lost his temper. County Court properly redacted references in the statement pertaining to defendant's prior bad acts and uncharged crimes after a pretrial motion and with direction from this Court (*see, People v Letendre*, 247 AD2d 796, *supra*). The remaining statements at issue regarding defendant's general loss of control when angry are not encompassed within the auspices of uncharged crimes or prior bad acts, and in light of the other evidence adduced at trial, their admission did not so severely prejudice defendant's case as to require reversal (*cf., People v Clark*, 194 AD2d 868, 870, *lv denied* 82 NY2d 752; *People v Jones*, 182 AD2d 708; *lv denied* 80 NY2d 905; *People v Rivera*, 132 AD2d 956).

With respect to the elements of the crime charged in count two of the indictment, arson in the third degree pertaining to another fire in the Town of DeKalb, St. Lawrence County, defendant contends that the People did not prove that the "sugar shack" was a "building" in accordance with the arson statute (*see*, Penal Law § 150.00). Penal Law § 150.00 (1) defines a "building" as including "any structure * * * used by persons for carrying on business therein". The owner of the structure testified that the building was constructed on a concrete slab and had a roof, and contained certain equipment used for the production of maple syrup. We disagree with defendant's assertion that the witness's description could only lead the jury

to conclude that the structure was merely a lean-to and instead find that the owner's testimony sufficiently established that the structure was a building within the meaning of the Penal Law.

Finally, defendant argues that the evidence presented at trial was legally insufficient to establish his guilt and that the verdict was not supported by the weight of the evidence. In reviewing the legal sufficiency of the evidence supporting the verdict, "the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached" (*People v Bleakley*, 69 NY2d 490, 495; *see, People v Hardy*, 232 AD2d 769, *lv denied* 89 NY2d 923). Viewing the evidence adduced at trial in a light most favorable to the People and crediting the prosecution's witnesses (*see, People v Contes*, 60 NY2d 620, 621; *People v Kennedy*, 47 NY2d 196, 203; *People v Spaulding*, 247 AD2d 762, 764), we conclude that the jury's verdict was rationally based. Also, after reviewing the evidence in a neutral light (*see, People v Holiday*, 249 AD2d 624, 625, *lv denied* 92 NY2d 899; *People v Rose*, 215 AD2d 875, 877, *lv denied* 86 NY2d 801; *People v Carthrens*, 171 AD2d 387, 392) and according deference to every reasonable inference that the jury could draw from the evidence given its opportunity to view the witnesses, hear the testimony and observe demeanor (*see, People v Bleakley, supra*, at 495; *People v Groom*, 188 AD2d 674, 675), we find that the verdict was not against the weight of the evidence.

We have considered defendant's remaining contentions and have found them lacking in merit.

Mercure, Peters and Carpinello, JJ., concur.

Mikoll, J. P. (concurring in part and dissenting in part). I respectfully dissent from that portion of the majority's decision which finds no error in County Court's denial of defendant's suppression motion.

Mindful that the analysis required of a court when determining whether the People have met their burden of demonstrating probable cause for an arrest is essentially the same as that applied when passing on an application for an arrest or search warrant (*see, People v Parris*, 83 NY2d 342, 346; *People v Dodt*, 61 NY2d 408, 415; *People v Bouton*, 50 NY2d 130, 135), my review of the *Dunaway* hearing compels the conclusion that the nature and quality of the information possessed by the police, while certainly adequate to create a reasonable suspicion of defendant's involvement in the fires, was insufficient to establish probable cause for his arrest. While I am in accord with the majority's observation that probable cause does not require

evidence sufficient to support a conviction or to establish a prima facie case, it remains equally true that suspicion or rumor alone will not suffice (see, People v Chase, 85 NY2d 493, 501; People v Parris, supra, at 348; People v Johnson, 66 NY2d 398, 403). I am of the view that the competent evidence presented by the People at the Dunaway hearing did not rise beyond the level of suspicion, albeit strong, to the mandated threshold of credible, objective evidence and articulable facts (see, CPL 70.10 [2]; People v Hicks, 68 NY2d 234).

A fundamental basis upon which I disagree with the majority's assessment of the evidence adduced at the Dunaway hearing concerns its reliance on the testimony of two civilian witnesses to buttress the factual predicate for the arrest. Arresting officer Augustus Burns testified that he interviewed several witnesses (including the two who testified at the hearing) during his investigation of the fires, and he recounted the information they imparted to him. In ascertaining whether probable cause was established, I would confine the examination to that information which Burns testified he learned from these witnesses prior to the arrest. The significance of this point lies in the fact that in several instances, the civilian witnesses' hearing testimony considerably expands upon Burns' account of his conversations with them, with no clear indication that these amplified accounts were conveyed to or known by him prior to the arrest. For example, the majority's reference to defendant's "reactions when confronted by acquaintances" after discovery of the first fire derives not from Burns' testimony, which makes no reference to this information, but from the hearing testimony of Michael McRobbie. Similarly, the majority's statement that Burns learned that defendant "planned to spend the night in the garage" misinterprets the record, which reveals that although one witness testified that "I think Rob [Sanderson] told [Burns] that * * * [defendant] * * * was going to spend the night in the garage", in actuality Burns testified that Sanderson told him that defendant had in the past spent the night in the garage.

Furthermore, I do not share the majority's willingness to consider Burns' conclusory testimony that the clothes defendant was wearing when arrested "did not match" the description of his attire given by witnesses who had seen him earlier that evening. "It is the responsibility of the suppression Judge, not the police, to make that determination" (People v Dodt, 61 NY2d 408, 416, supra), and "the court must be presented with facts, not assurances * * * [or s]ummary statements" (People v Bouton, 50 NY2d 130, 135, supra). Absent testimony from

Burns describing the clothing in question, enabling the suppression court to draw the appropriate conclusion, I would accord Burns' testimony no weight in the probable cause determination.

Finally, I have grave concerns about the propriety of treating a suspect's arrest record for a similar crime as a factor bearing upon a probable cause determination. Nor do I read the Second Department's decision in *People v Thompson* (175 AD2d 189) as standing for such a perilous proposition. At issue in *Thompson* (*supra*) was probable cause for the defendant's arrest for one of a string of residential burglaries committed within one week of another in the same area, as to two of which the defendant had already been charged prior to the challenged arrest. In citing the incidents of probable cause (including the defendant's possession of the fruits of the burglary in question), the Second Department included the arresting officers' knowledge, obtained directly from the detective coordinating the overall investigation, that the defendant had been arrested and charged with two of the other related burglaries. *Thompson's* unique circumstances, particularly the officers' knowledge of the underlying facts and relatedness of the prior arrest, render it qualitatively distinguishable from the circumstances presented herein.

I would, therefore, vacate defendant's conviction under counts one and three of the indictment, grant his suppression motion and remit to County Court for a new trial. Insofar as they relate to the remaining count of which defendant was convicted, I concur with the majority's determination of the remainder of defendant's contentions on appeal, and would affirm the judgment of conviction under count two of the indictment.

Ordered that the judgment is affirmed.