(July 13, 2006)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JASON T. HOFELICH, Appellant. [819 NYS2d 159]—

Mugglin, J. Appeals (1) from a judgment of the County Court of Schenectady County (Eidens, J.), rendered October 26, 2001, which revoked defendant's probation and imposed a sentence of imprisonment, and (2) from a judgment of said court, rendered January 25, 2002, upon a verdict convicting defendant of the crime of criminal possession of a controlled substance in the third degree.

In September 2000, defendant, who was on lifetime probation following his conviction for the crime of criminal sale of a controlled substance in the third degree, was charged with violating two of the terms of his probation. During the pendency of the probation violation petition, defendant was arrested and charged with two counts of criminal possession of a controlled substance in the third degree. Following a hearing, defendant was found to have violated the terms of his probation and was sentenced to a prison term of 6 to 18 years. Additionally, following the completion of several pretrial hearings and a jury trial, defendant was found guilty of criminal possession of a controlled substance in the third degree and sentenced as a second felony offender to a prison term of 12½ to 25 years. Defendant's motion to set aside the verdict pursuant to CPL article 330 was denied and defendant now appeals from the judgment revoking his probation and the judgment of conviction.

First, we are unpersuaded that County Court's findings of a violation of probation were not supported by sufficient proof. With respect to the allegation that defendant failed to complete a prescribed treatment program as directed by the Probation Department, two members of the Probation Department responsible for supervision of defendant testified that defendant was dismissed from the program because of inappropriate behavior. Defendant's dismissal from the program was documented by the business records of the Probation Department which were received in evidence. Thus, we conclude that this violation was supported by a preponderance of the evidence (see CPL 410.70 [3]; *People v Raleigh*, 184 AD2d 869, 870 [1992], *lv denied* 80 NY2d 908 [1992]).

Next, a preponderance of the evidence supports the conclusion that defendant used drugs in violation of the terms and conditions of his probation. Defendant's probation officer, trained in conducting urine tests for the presence of illegal narcotics, testified that defendant's urine tested positive for at least one illegal narcotic on at least seven occasions between March and September 2000. Moreover, defendant impliedly admitted drug use by informing the probation officer that he was trying to reduce his drug use (see *People v Meyer*, 1 AD3d 721, 721 [2003], *lv denied* 1 NY3d 631 [2004]).

Turning to defendant's conviction for criminal possession of a controlled substance in the third degree, we are persuaded by defendant's argument that County Court erred in failing to suppress the evidence retrieved during the police search of his automobile. We begin this review by observing that, in determining the sufficiency of the evidence at the suppression hearing, we are limited to that testimony and it cannot be bolstered by trial testimony (*see People v Gonzalez*, 55 NY2d 720, 721-722 [1981], *cert denied* 456 US 1010 [1982]; *People v Franklin*, 288 AD2d 751, 753-754 [2001], *lv denied* 97 NY2d 728 [2002]).

On the first day of the combined hearings, the suppression evidence reveals that the police, on November 27, 2000, received two telephone calls from an anonymous tipster who advised them that defendant, traveling with a Korean female in a white Lincoln with dark tinted windows, bearing license plate number GF450K, was traveling to New York City to buy two ounces of cocaine and would be returning to the City of Schenectady, Schenectady County that afternoon. As a result, two investigators stationed themselves in an unmarked police car at the Highbridge exit of Interstate 890 where, a short time later, they saw such a car and followed it, confirming the license number. As they followed the Lincoln, the investigators observed three traffic violations and radioed to have a patrol vehicle stop the car since they were not equipped with an emergency light. Before the patrol car arrived, the Lincoln reached its destination and stopped. The investigators parked behind it and approached the Lincoln. At this point, testimony was concluded for the day. Two days later, when the hearings resumed, evidence of the violations of probation was taken prior to the continuation of the combined *Huntley/Mapp* hearing. When that resumed, defendant had been placed in the rear seat of the police vehicle and the testimony involved three subjects: (1) defendant receiving his *Miranda* warnings;* (2) defendant using his cell phone to call his attorney who advised the police that defendant would not consent to the search of his automobile and to not question defendant; and (3) a statement made by defendant. The testifying officers were uncertain as to the sequence of these events.

A defendant who challenges the legality of a search and seizure bears the burden of proving illegality, but the People are required in the first instance to establish the legality of the po-

---

\* Here, the only evidence is that of one investigator who testified that he asked defendant if the other investigator had given him the *Miranda* warnings and defendant replied that he had. The trial testimony of the latter investigator reveals doubt regarding whether the warnings were complete.

lice conduct (*see People v Berrios*, 28 NY2d 361, 367 [1971]). While an anonymous tip permits the police to inquire, "to elevate the right of inquiry to the right to forcibly stop and detain, the police must obtain additional information or make additional observations of suspicious conduct sufficient to provide reasonable suspicion of criminal behavior" (*People v Moore*, 6 NY3d 496, 500-501 [2006]). Here, County Court correctly concluded that nothing that defendant did prior to the police approaching his vehicle was indicative of criminal activity. Consequently, to elevate this encounter to either a level two common-law right of inquiry or level three forcible detention of an individual (*see People v De Bour*, 40 NY2d 210 [1976]; *see also People v Moore, supra* at 498-499), the police must have a founded suspicion that criminal activity is afoot or a reasonable suspicion that a particular individual is involved in a felony or misdemeanor.

In its suppression decision, County Court found that when the police investigator approached defendant's vehicle defendant asked, "What's up?" and the investigator told defendant that the police had information that he was bringing cocaine into Schenectady; defendant then asked, "Is there anything we can do?" County Court also found that at some point, one of the investigators saw a package partially protruding from the pouch on the rear of the driver's seat in defendant's vehicle and called for a canine unit to aid in the investigation. The obvious difficulty, as conceded by the People in their brief, is that there is no record support for these findings in the suppression hearing. While such a statement by defendant and the observation by the police could elevate the levels of inquiry, we cannot consider them as they are not part of the suppression evidence. As the evidence before the suppression court does not support the findings of fact nor the conclusions of law, we conclude that the evidence fails to establish the legality of the police conduct in detaining defendant and searching his vehicle. In view of this finding, we have not reached the balance of defendant's contentions.

Cardona, P.J., Mercure, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment rendered October 26, 2001 is affirmed. Ordered that the judgment rendered January 25, 2002 is reversed, on the law, and indictment dismissed.