Appeal by the People from an order of the Supreme Court, Queens County (Lebowitz, J.), dated June 13, 2012, which granted the defendant’s motion to suppress physical evidence and a statement made by the defendant to law enforcement officials.
Ordered that the order is affirmed.
Three police officers were driving through an area in which there had been numerous complaints of drug activity when they saw the defendant standing on the street holding two or three cigarettes in his hand, and “thought he was, possibly, might have been selling loose cigarettes.” The officers executed a U-turn and, as they approached, the defendant stepped into the street as if to cross. The officers stopped and called to the defendant, who stepped back onto the sidewalk and began to walk away in another direction. The officers exited the car and again called to the defendant, who stopped.
One of the officers asked the defendant for his name, to produce identification, and to state what he was doing in the area, and the defendant complied. The defendant denied selling cigarettes, stating that he had just bought them from a store on the corner. The officer noticed that the defendant was wearing black and red beads, and had a teardrop tattoo below his eye, *1108 indicating membership in the Bloods gang, and asked the defendant if he was a member of a gang. The defendant admitted that he was a member of the Bloods gang. However, when asked if he was carrying a weapon, the defendant refused to answer. Although the defendant made no threatening moves, the officer, who observed a bulge in the defendant’s waistband under the defendant’s untucked shirt and black bubble down vest, placed the defendant against a wall and conducted a pat-down search, and recovered a handgun from the defendant’s waistband. The defendant stated “I am going to be in a lot of trouble for this.”
After a suppression hearing, the Supreme Court granted the defendant’s motion to suppress the physical evidence and his statement, finding that the police officer lacked reasonable suspicion to stop and frisk the defendant. The People appeal.
In People v De Bour (40 NY2d 210 [1976]) the Court of Appeals provided a “graduated four-level test for evaluating street encounters initiated by the police” (People v Moore, 6 NY3d 496, 498 [2006]). Under this test, “level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime” (id. at 498-499, citing People v De Bour, 40 NY2d at 223 and People v Hollman, 79 NY2d 181, 184-185 [1992]; see People v Garcia, 20 NY3d 317, 322 [2012]; People v Brannon, 16 NY3d 596, 601 [2011]). The level one request for information may include “ ‘basic, nonthreatening questions regarding, for instance, identity, address or destination’ ” (People v Garcia, 20 NY3d at 322, quoting People v Hollman, 79 NY2d at 185). However, “ ‘[o]nce the officer asks more pointed questions that would lead the person approached reasonably to believe that he or she is suspected of some wrongdoing . . . the officer is no longer merely seeking information’ ” (People v Garcia, 20 NY3d at 322, quoting People v Hollman, 79 NY2d at 185) and the encounter has become a level-two common-law inquiry, which must be supported by “ ‘ “a founded suspicion that criminal activity is afoot” ’ ” (People v Garcia, 20 NY3d at 322, quoting People v Hollman, 79 NY2d at 185, quoting People v De Bour, 40 NY2d at 223). “[A] police officer who asks a private citizen if he or she is in posses *1109 sion of a weapon must have founded suspicion that criminality is afoot” (People v Garcia, 20 NY3d at 324).
“[T]o elevate the right of inquiry to the right to forcibly stop and detain, the police must obtain additional information or make additional observations of suspicious conduct sufficient to provide reasonable suspicion of criminal behavior” (People v Moore, 6 NY3d at 500-501). “ ‘[I]nnocuous behavior alone will not generate a founded or reasonable suspicion that a crime is at hand’ ” (id. at 501, quoting People v De Bour, 40 NY2d at 216). Thus, “in order to justify a frisk of a suspect’s outer clothing, a police officer must have 1 “knowledge of some fact or circumstance that supports a reasonable suspicion that the suspect is armed or poses a threat to safety” ’ ” (People v Davenport, 92 AD3d 689, 690 [2012], quoting People v Caicedo, 69 AD3d 954, 954 [2010], quoting People v Batista, 88 NY2d 650, 654 [1996]; see People v Shuler, 98 AD3d 695, 696 [2012]; Matter of Jaquan M., 97 AD3d 403 [2012]).
Even assuming that the police were justified in conducting a level-two common-law inquiry, they lacked the reasonable suspicion necessary to support a level-three encounter consisting of a pat-down or “stop-and-frisk” search (see People v Batista, 88 NY2d at 654; People v Shuler, 98 AD3d at 696). An unidentifiable bulge which is “readily susceptible of an innocent as well as a guilty explanation” is not sufficient to justify a pat-down search (People v Stevenson, 7 AD3d 820, 820 [2004]). Moreover, because “[t]he defendant had the right to refuse to answer the [officer’s] questions, . . . the fact that he did not answer [whether he had a weapon] did not justify a further intrusion” (id. at 821).
Accordingly, the defendant’s motion to suppress the gun and his statement was properly granted. Dillon, J.E, Lott, Austin and Hinds-Radix, JJ., concur.