People v Smith (2024 NY Slip Op 50746(U))

[*1]

People v Smith

2024 NY Slip Op 50746(U)

Decided on June 18, 2024

Supreme Court, Kings County

Daniels-DePeyster, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2024
Supreme Court, Kings County

The People of the State of New York

against
Jeremy Smith, Defendant.

Indictment No. 71149-23

ADA Alejandro Vera for DA Eric Gonzalez, Kings County, District Attorney's Office Neville Onielle Dexter Mitchell for the defendant

Claudia Daniels-DePeyster, J.

The defendant charged with Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03(3)) and other related charges moves to suppress the recovered firearm. On April 10, 2024, this Court conducted a combined Dunaway/Mapp hearing. The People called one witness: Police Officer Stefan Weaver. Additionally, the People introduced three exhibits: a photograph of the recovered firearm; a disc containing the body-worn camera footage of Sergeant Beasley, Officer Murphy, and Officer Weaver; and an invoice. The defendant did not present any witnesses or introduce any evidence. 
Based upon the testimony at the hearing and the applicable law, the motion to suppress is GRANTED. I. FINDINGS OF FACT
As a preliminary matter, the Court finds that the witness was credible. 
Police Officer Stefan Weaver has been with the New York City Police Department (hereinafter "NYPD") for approximately six years and is currently assigned to the Brooklyn North Community Response Team (Tr. at 6). Officer Weaver said that on June 7, 2022, he was in uniform and assigned to neighborhood safety near Throop Avenue and Monroe Street in Kings County (Tr. at 7, 11, 26). Officer Weaver was in an unmarked vehicle with Officer Lenehan and Officer McDuffy. Sergeant Beasley, Officer Perry, and Officer Murphy were in a separate vehicle (Tr. at 26, 37). At approximately 11:00 pm, the officers "received information from the 8-1, the field intelligence officers, that there's an individual" "around the area of Gates Avenue and Marcus Garvey Boulevard" "wearing a black hoody, wearing black pants, heavy set, approximately 300 pounds, and he has a gun" (Tr. at 7-8, 26-27, 33). Upon receiving this information, Officer Weaver "immediately went to that location" (Tr. at 9). Near Throop Avenue and Monroe Street, "approximately five to ten feet away," he "observed a male individual fitting the description" he was given earlier (Tr. at 9, 27, 29). This individual was "walking southbound on Throop Avenue" from the direction of "Gates and Garvey" (Tr. at 27-28). At the hearing, the officer identified this individual as the defendant (Tr. at 12). As the defendant walked past Officer Weaver's car, Officer Weaver notified the other officers in his vehicle and "also put it [*2]over the radio" (Tr. at 10, 29-30, 35).
Officer Weaver exited his vehicle, "maintained a visual observation" of the defendant and followed him (Tr. at 11). He observed the defendant get into the driver's seat of a "a white Ford sedan" (hereinafter "the Ford") (Tr. at 11). No one else was in the Ford (Tr. at 11-12). Officer Weaver did not observe the defendant "reach towards the glove compartment," "the console" or the "back of the car" and did not observe a bulge on the defendant (Tr. at 54, 30). Officer Perry instructed the defendant to "step out of the vehicle," and the defendant was taken TO "[t]he rear of that vehicle" to be searched for safety purposes (Tr. at 12-13, 31-32, 35, 50-51, 59). The defendant was not yet under arrest (Tr. at 32). While Officers Weaver, Perry, and McDuffy were at the back of the vehicle with the defendant, Sergeant Beasley searched the vehicle (Tr. at 13-14, 21, 31). As he searched, the Sergeant said "92," signaling that "there is a gun" (Tr. at 14, 23). The defendant was arrested and transported to the 81 precinct (Tr. at 15, 23, 32, 59). The gun was recovered from the glove compartment, and the Ford was transported back to the 81 precinct (Tr. at 14-15). The Evidence Collection Team was notified about the gun and processed it (Tr. at 15-16).
II. CONCLUSIONS OF LAW
On a motion to suppress evidence, the prosecution has the initial burden of going forward to demonstrate the legality of the police actions and must introduce credible evidence to meet this burden (People v. Hernandez, 40 AD3d 777 [2d Dept, 2007]; see People v. Berrios, 28 NY2d 361, 369 [1971]).
For the Dunaway/Mapp prong of this hearing, the initial burden of proof rests with the People to put forward credible evidence tending to show that law enforcement acted lawfully. The defendant has the burden of proving by a preponderance of the evidence that the police acted unlawfully (see People v. Baldwin, 25 NY2d 66 [1969]; see People v. Parker, 180 AD3d 1072 [2d Dept, 2020]). The Court must determine whether the police action was "justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place" (People v. Wheeler, 2 NY3d 370, 374 [2004]).
To assess the propriety of a street encounter with police, the Court must employ the four-tiered framework set forth in People v. DeBour (40 NY2d 210 [1976]) and reaffirmed in People v. Hollman (79 NY2d 181 [1992]). Each progressive level under this framework "authorizes a separate degree of police interference with the liberty of the person approached and consequently requires escalating suspicion on the part of the investigating officer" (id. at 185). "The justification for each escalation is based on the totality of the circumstances at the moment the escalation occurs, building on the officer's prior observations and actions of both the officer and the private individual" (People v. Johnson, 40 NY3d 172, 179 [2023]).
Level One — Request for Information: Law enforcement may engage in minimally intrusive questioning to request information "when there is some objective credible reason for that interference not necessarily indicative of criminality" (DeBour, 40 NY2d at 223). The request for information cannot be based on conduct that is otherwise innocent and "must be predicated on more than a hunch, whim, caprice or idle curiosity" (People v. Ocasio, 85 NY2d 982, 985 [1995]). A level one request for information must be limited to "basic, non-threatening questions" regarding, for example, address, destination, or identity (People v. Kennebrew, 106 AD3d 1107, 1109 [2d Dept, 2013]). An individual does have the right to walk away without responding (see People v. Howard, 50 NY2d 583 [1980]).
Level Two — Common Law Right of Inquiry: Law enforcement is permitted "to gain [*3]explanatory information short of forcible seizures" upon a "founded suspicion that criminal activity is afoot" (DeBour, 40 NY2d at 223). A level two intrusion would involve more pointed questions that would reasonably lead the person approached to believe that they are suspected of some wrongdoing (Kennebrew, 106 AD3d at 1109).
Level Three — Reasonable Suspicion: Permits "a forcible stop and detention" but requires the officer to have "a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor" (DeBour, 40 NY2d at 223). Reasonable suspicion is defined as the "quantum of knowledge sufficient to induce an ordinarily prudent and cautious person under the circumstances to believe criminal activity is at hand" (People v. Martinez, 80 NY2d 444 [1992], citing People v. Cantor, 36 NY2d 106 [1975]). However, "innocuous behavior alone will not generate a founded suspicion that a crime is at hand" (Kennebrew, 106 AD3d at 1109; see People v. Brannon, 16 NY3d 596, 602[2011]("reasonable suspicion requires specific and articulable facts which, along with any logical deductions, reasonably prompted the intrusion" [emphasis added])). An effect of this right to temporarily detain is the "authority to frisk if the officer reasonably suspects that [they are] in danger of physical injury by virtue of the detainee being armed" (DeBour, 40 NY2d at 223; see People v. Carney, 58 NY2d 51 [1982](a police officer with knowledge of facts indicating that the individual is armed or dangerous may frisk a suspect)). 
Level Four — Reasonable Cause: Law enforcement may arrest and take a person into custody when that officer "has reasonable cause to believe that person has committed a crime, or offense in [the officer's] presence" (id.).
A. The Stop
At the hearing, Officer Weaver testified to the description he was provided of an individual with a firearm and how the defendant fit that description. This information originally came from a confidential informant [FN1]
.
This Court finds that the information provided the officers with reasonable cause to believe that the defendant committed a crime. The officers also had probable cause to approach and arrest the defendant based on the information provided by the confidential informant (see People v. Williams, 301 AD2d 543 [2d Dept, 2003]("information provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest"); see People v. James, 166 AD3d 1011, 1012 [2d Dept, 2018] ("Generally, a police officer has reasonable suspicion to stop and detain an individual where the individual matches the description of a perpetrator's appearance and is located close to the crime scene, both temporally and geographically"); see People v. McClain, 67 AD3d [4th Dept, 2009](information provided by an identified citizen, accusing another of a specific crime, is sufficient to provide the police with probable cause to arrest)).
B. The Search
"[T]he use of a vehicle upon a public way does not effect a complete surrender of any objectively reasonable, socially acceptable privacy exception (People v. Weaver, 12 NY3d 433, 444 [2009]). "A police officer's entry into a citizen's effects located within are significant encroachments upon that citizen's privacy interest" (People v. Torres, 74 NY2d 224, 229-230 [1989]). Therefore, "such intrusions must be both justified in their inception and reasonably related in scope and intensity to the circumstances which rendered their initiation permissible" (id.).
It is well settled that, "it is unlawful for a police officer to invade the interior of a stopped vehicle once the suspects have been removed and patted down without incident, as any immediate threat to the officers' safety has consequently been eliminated" (People v. Mundo, 99 NY2d 55 [2002]). An exception to this rule provides for a limited protective search of the vehicle for weapons where "facts revealed during proper inquiry or other information gathered during the course of the encounter lead to the conclusion that a weapon located within the vehicle present an actual and specific danger to the officers' safety" (Torres, 74 NY2d at 231 ["[a] police officer acting on reasonable suspicion that criminal activity is afoot and on an articulable basis to fear for his own safety may intrude upon the person or personal effects of the suspect only to the extent that is actually necessary to protect himself from harm"]). In order for there to be an "actual and specific danger," there must be a "substantial likelihood of a weapon in the car" (Mundo, 99 NY2d at 61[internal citations and quotations omitted]; see People v. Hardee, 30 NY3d 991 [2017](search of the interior of the automobile was justified where there was a substantial likelihood that a weapon was in the vehicle, and the danger to police was actual and specific); see People v. Ramos, 122 AD3d 462 [1st Dept, 2014](reasonable suspicion justified stopping the defendant's vehicle, but the search was not justified under the automobile presumption as there was no probable cause to believe contraband existed)). "Reasonable [*4]suspicion alone will not suffice" (People v. Carvey, 89 NY2d 707 [1997]; see People v. Belton, 55 NY2d 49 [1982](the police must have probable cause to believe that an automobile contains evidence of a crime or contraband before they may legally search it and properly seize any evidence found)).
Here, once the officers had removed the defendant from the vehicle, conducted a protective pat-down, and satisfied themselves that there was no immediate threat to safety, there was no justification for conducting a search of the vehicle. The officer did not articulate any specific safety concern: the defendant did not make an attempt to flee, nor did he attempt to access any portion of the interior of the vehicle prior to being asked to step out (People v. Samuels, 50 NY2d 1035 [1980](a holster itself is "not sufficient evidence of criminality to permit more than an inquiry" by police); People v. Ellis (62 NY2d 393 [1984](the discovery of bullets during a frisk of a suspect stopped for a traffic infraction provided probable cause to search the glove compartment; bullets, "have no other practical use than as ammunition for a deadly weapon" and are, therefore, "more immediately associated with the presence of a deadly weapon"); Carvey, 89 NY2d at 712 ("[t]he act of wearing a bulletproof vest thus suggests more than the presence of a deadly weapon — it demonstrates its owner's readiness and willingness to use a deadly weapon")). Moreover, as the defendant had been moved to the rear of the vehicle and was surrounded by multiple officers, the officers would not have had any residual fear about the defendant's ability to break away and retrieve anything from inside the vehicle.
Moreover, the case at hand is unlike the cases primarily relied on by the People (see People v. Blasich, 73 NY2d 673 [1989]; see People v. Green, 100 AD3d 654 [2d Dept, 2012]), as those cases rely on the "search incident to arrest" exception, which is not applicable under these circumstances, as the defendant in this case was not under arrest when the vehicle was being searched (see People v. Driscoll, 101 AD3d 1466 [3d Dept, 2012]; see Chimel v. California, 395 US 752 [1969](search incident to arrest only extends to the defendant's person and the area within the defendant's immediate control); see Arizona v. Gant, 556 US 332 [2009](searching a vehicle while the defendant was handcuffed in a patrol car is unreasonable and the search incident to arrest exception does not apply)).
For all these reasons, this Court concludes that the officer's conduct in searching the defendant's vehicle was not reasonably related to the need to protect the officer's safety in this street encounter, and the motion to suppress the firearm is granted.
This constitutes a Decision and Order of the Court.
Dated: June 18, 2024
Kings County, New York

Footnotes

Footnote 1:On January 29, 2024, this court conducted a Darden hearing pursuant to People v. Darden (34 NY2d 177 [1974]) as the circumstances leading to the arrest of the defendant were based upon information obtained by the police from a confidential informant (CI). During that hearing, Detective Casciola provided the Court with details on the registered CI, including their CI number, their nickname or street name, and the fact that they had previously provided positive information, which led to the recovery of a firearm. Detective Casciola also described the compensation that the CI received for the informant's positive assistance to the police in the instant matter. He further explained that his Sergeant was the handler for the CI, was in close contact with the CI, and that Detective Casciola also worked with the CI. According to Detective Casciola, the CI stated that on or about June 7, 2022, at an approximate time disclosed to the Court, a suspect described as a male black, tall, approximately 300 pounds, wearing a black sweatshirt, black jeans, and a black fitted cap stood at the intersection of Marcus Garvey Blvd and Gates Avenue with a gun holstered on his right side. The gun in the holster was visible to the CI. Detective Casciola said that this information led to the arrest of a suspect. Although the informant failed to appear before the Court, the Court still had an opportunity to determine the existence, credibility, and reliability of the informant and found that the People successfully established the existence and reliability of the confidential informant and the basis of the informant's knowledge at the Darden hearing (see generally People v. Johnson, 66 NY2d 398, 402—403 [1985]; see People v. Carpenito, 80 NY2d 65 [1992](the People can establish the existence of the confidential informant through extrinsic evidence once the People have demonstrated the informant is legitimately unavailable)). The Court also found that "the information provided by the [informant] carried sufficient indicia of reliability to permit the officer to reasonably credit it" (People v. Bashian, 190 AD2d 681, 682 [2d Dept, 1993]).