People v Johnson (2024 NY Slip Op 50933(U))

[*1]

People v Johnson

2024 NY Slip Op 50933(U)

Decided on July 19, 2024

Justice Court Of The Town Of Big Flats, Chemung County

Brink, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 19, 2024
Justice Court of the Town of Big Flats, Chemung County

The People of the State of New York,

against
Stanley W. Johnson, Defendant.

Case No. 24010100

Weeden A. Wetmore, District Attorney, Elmira (Philip A. Alvaro of counsel), for the People
Buzzetti Law Office, Elmira, for defendant

Richard J. Brink, J.

The defendant is charged with per se and common law driving while intoxicated, and unsafe backing, in violation of VTL §§ 1192(2) and (3), and 1211(a), respectively. Defendant moves to suppress physical evidence and statements and alleges that the arrest was effectuated without probable cause. On July 9, 2024, the court held a Huntley/Dunaway/Mapp hearing.
 FINDINGS OF FACT
A citizen informant called 911 at approximately 7:52 p.m. on January 18, 2024, stating that her vehicle had been involved in a hit and run accident on Sing Sing Road near the airport in the Town of Big Flats in Chemung County, New York. She provided the communications center (Comm Center) with the license plate number and a description of the other vehicle which had left the scene of the accident. The citizen informant and a witness to the accident followed the other vehicle from the scene to the vicinity of a residence on Park Terrace in Big Flats. 
Deputy Calum Houper and Deputy Miller were patrolling in separate vehicles and responded to the location of the citizen informant and the witness. Upon arrival, the deputies observed damage to the left side door area of the citizen informant's vehicle. Deputy Miller spoke with the citizen informant and confirmed the license plate number and the description of the other vehicle involved in the accident. The citizen informant and the witness pointed out the direction that the other vehicle had travelled.
As the deputies canvassed the area, the deputies observed the defendant's vehicle parked in the driveway of a residence located at 50 Park Terrace approximately 50 yards away from where they had interviewed the citizen informant and the witness. Upon closer inspection, the deputies observed damage to the rear bumper of the vehicle located in the driveway. Deputy Houper testified to observing scratches, with paint transfer and no salt accumulation indicating recent damage. The vehicle's license plate number and description matched the information of the vehicle provided by the Comm Center, and confirmed by the citizen informant, reported to [*2]be involved in the accident. There were 2 to 3 inches of snow on the ground and fresh tire tracks in the driveway from the vehicle.
At approximately 8:20 p.m., the deputies approached the front door of the residence, the purpose of which, Deputy Houper testified, was initially to investigate a property damage accident. It is unclear whether the defendant or his wife emerged first when the door opened, but ultimately Deputy Houper had a conversation with the defendant as the defendant stood in the doorway. Standing approximately 5 or 6 feet away, Deputy Houper observed the defendant to be unsteady on his feet—swaying—with glassy, somewhat red eyes. In response to questioning by Deputy Houper, the defendant stated that he had been operating the vehicle that day, and had returned home from Ill Eagle, a bar located in Elmira, New York, where he had consumed 2 beers. The defendant denied any involvement in an accident. However, Deputy Miller recalled the defendant also stating that he had driven in the vicinity of the accident scene, although this statement was not contained in any CPL 710.30 notice.
Deputy Houper invited the defendant to look at the damage to the back of his vehicle. The defendant agreed and, as he walked by, Deputy Houper detected the odor of alcohol emanating from the defendant. Upon observing the damage to his vehicle, the defendant stated that the damage was pre-existing.
Suspecting that the defendant may have been impaired or intoxicated, Deputy Houper contacted his Lieutenant, who advised Deputy Houper to inquire whether the defendant had consumed any alcohol since returning home. The defendant denied consuming any additional alcohol upon returning home.
Deputy Houper then asked the defendant to consent to field sobriety testing. First, Deputy Houper performed the Horizontal Gaze Nystagmus (HGN) test. Deputy Houper observed the defendant to have a lack of smooth pursuit, and nystagmus (or jerking of the eyes) at maximum deviation and prior to 45 degrees, which, according to his training, are clues for intoxication.
Next, Deputy Houper asked the defendant to perform the Walk and Turn and the One Leg Stand tests. The defendant declined, stating that he has a physical condition which would interfere with his ability to perform those tests. Although Deputy Houper asked the defendant to perform a pre-breath test, it was not clear to the Court from the hearing testimony whether the defendant completed the test as the People transitioned to another line of questioning.
The defendant was then placed under arrest, handcuffed, and placed in the back of a patrol car. Deputy Houper read a chemical test refusal warning and a Miranda warning printed on the front and back of a laminated card. See People's exhibits 1, 2. Following those warnings, the defendant consented to a breathalyzer chemical test at the Chemung County Sheriff's Office in Elmira. After Deputy Houper transported the defendant to the Sheriff's Office, another deputy administered the breathalyzer test at approximately 9:34 p.m., which reported a BAC of 0.16%. While Deputy Houper was transporting the defendant, Deputy Miller secured written statements from the citizen informant and the witness.
At some point during the encounter, Deputy Houper requested the defendant's driver's license, which the defendant produced. The name on the license matched the name of the defendant. Deputy Houper also identified the defendant in the courtroom during the hearing, although the defendant was the only person in the courtroom not an attorney or affiliated with the Court.
The deputies each had less than two years of experience at the time of their interaction [*3]with the defendant. Although the deputies acknowledged a lack of experience and unfamiliarity with the full capabilities of their body cameras, the meaning of "contemporaneous" and obligations under CPL 710.30, their candor in this regard rendered their testimony even more credible, which testimony the Court fully credits. They remained polite and respectful, despite zealous advocacy on cross-examination, their testimony was substantially consistent and their rendition of the facts wholly plausible.

 DISCUSSION
A. Huntley Hearing
"At a Huntley hearing, the People have the burden of proving beyond a reasonable doubt that the defendant's statements to police were voluntarily given and that any custodial interrogation was preceded by the administration and the defendant's knowing waiver of his or her Miranda rights. To determine whether a defendant's statements were voluntary, the totality of the circumstances under which they were obtained should be examined. If the People meet their burden, then the defendant bears the burden of persuasion." People v Smith, 193 AD3d 1260 (3d Dept 2021) (internal quotation marks and citations omitted), lv denied 37 NY3d 968 (2021); see People v Steigler, 152 AD3d 1083, 1083 (3d Dept 2017), lv denied 30 NY3d 983 (2017); Penal Law § 60.45; see generally People v Huntley, 15 NY2d 72, 78 (1965).
Here, the deputies' questioning of the defendant at his residence "about what had happened, . . . whether he had been drinking and whether he had been driving the vehicle was clearly investigatory, not custodial, interrogation." People v Hennigan, 135 AD2d 1082, 1083 (4th Dept 1987); accord People v Hanna, 185 AD2d 482, 482 (3d Dept 1992), lv denied 80 NY2d 930 (1992); People v Steinhilber, 48 AD3d 958, 959 (3d Dept 2008), lv denied 10 NY3d 871 (2008). The defendant's statement that he had been driving in the vicinity of the accident will not be excluded, despite the failure to include the sum and substance of that particular statement in the CPL 710.30 notice, "because he moved to suppress his statements, [and] those statements were identified at [the] hearing addressing their voluntariness." People v Lazzaro, 62 AD3d 1035, 1036 (3d Dept 2009); see People v Davis, 144 AD3d 1188, 1189 (3d Dept 2016), lv denied 28 NY3d 1144 (2017); People v Bianca, 91 AD3d 1127, 1130 (3d Dept 2012), lv denied 19 NY3d 862 (2012); CPL § 710.30(3); see also People v Wilson, 144 AD2d 980, 980 (4th Dept 1988) ("the single 710.30 notice was adequate to provide defendant with an opportunity to contest the voluntariness of the admission"), lv denied 73 NY2d 985 (1989), lv dismissed 74 NY2d 670 (1989). There is no requirement to administer Miranda warnings during the investigatory phase of questioning, including prior to a request to submit to field sobriety testing. See People v Hager, 69 NY2d 141, 142 (1987); People v Jacquin, 71 NY2d 825, 826 (1988); People v Berg, 92 NY2d 701, 705 (1999); People v Dougal, 266 AD2d 574, 576 (3d Dept 1999), lv denied 94 NY2d 879 (2000). Provided the existence of probable cause, discussed supra, the defendant's breathalyzer test results are also not excluded since he consented, and the results are non-testimonial. See Schmerber v California, 384 US 757, 765 (1966); People v Odum, 31 NY3d 344, 350-51 (2018). As well, the defendant's assent to take the test is not excluded. People v Rosario, 136 Misc 2d 445 (Crim Ct, Bronx County 1987).
B. Dunaway/Mapp Hearing
As relevant here, the purpose of a Dunaway hearing is to determine whether there was probable cause to arrest the defendant. "Under well-established exclusionary rule principles, where police have engaged in unlawful activity—here, by [allegedly] arresting defendant without probable cause—evidence which is a result of the 'exploitation of that illegality' is [*4]subject to suppression as the 'fruit of the poisonous tree' unless one of the recognized exceptions to the exclusionary rule is applicable." People v Small, 110 AD3d 1138, 1140 (3d Dept 2013), quoting Wong Sun v United States, 371 US 471, 488 (1963); see Dunaway v New York, 442 US 200 (1979); People v Huntley, 259 AD2d 843, 845 (3d Dept 1999) (defining a Dunaway hearing as a hearing on "a motion to suppress evidence ... obtained as the alleged fruit of an unlawful arrest without probable cause"), lv denied 93 NY2d 972 (1999).
In contrast, a Mapp hearing is to determine whether evidence was obtained by an unreasonable search and seizure in violation of the Fourth Amendment. See Mapp v Ohio, 367 US 643 (1961); Huntley, 259 AD2d at 845 (defining a Mapp hearing as a hearing on "a motion to suppress tangible evidence"). An arrest without probable cause constitutes an unreasonable seizure. Ingram v City of Columbus, 185 F3d 579, 592-93 (6th Cir 1998).
"In determining probable cause, the standard to be applied is that it must 'appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator, for conduct equally compatible with guilt or innocence will not suffice.'" People v Vandover, 20 NY3d 235, 237 (2012), quoting People v Carrasquillo, 54 NY2d 248, 254 (1981); see People v Chestnut, 51 NY2d 14, 20 n 2 (1980) ("It is now axiomatic that '[p]robable cause exists if the facts and circumstances known to the arresting officer warrant a prudent man in believing that [an] offense has been committed' by the person to be arrested"), quoting People v Oden, 36 NY2d 382, 384 (1975); Maryland v Pringle, 540 US 366 (2003) ("the substance of all the definitions of probable cause is a reasonable ground for belief of guilt" determined by "examin[ing] the events leading up to the arrest ... viewed from the standpoint of an objectively reasonable police officer").
"For the Dunaway/Mapp prong of this hearing, the initial burden of proof rests with the People to put forward credible evidence tending to show that law enforcement acted lawfully. The defendant has the burden of proving by a preponderance of the evidence that the police acted unlawfully." People v Smith, 83 Misc 3d 1218(A), 2024 NY Slip Op 50746(U), *2 (Sup Ct, Kings County 2024), citing People v Baldwin, 25 NY2d 66 (1969); People v Parker, 180 AD3d 1072 (2d Dept 2020), lv denied 35 NY3d 994 (2020); see People v Di Stefano, 38 NY2d 640, 652 (1976) ("It is the accused not the People, who must shoulder the burden of persuasion on a motion to suppress evidence. The People have only the burden of going forward to show the legality of the police conduct in the first instance."); People v Hofelich, 31 AD3d 882, 884-85 (3d Dept 206) ("A defendant who challenges the legality of a search and seizure bears the burden of proving illegality, but the People are required in the first instance to establish the legality of the police conduct"), lv denied 7 NY3d 867 (2006), citing People v Berrios, 28 NY2d 361, 367 (1971). 
Here, concluding that the vehicle parked at the defendant's residence "had been in an accident, the deput[ies] decided to investigate, which [they were] authorized to do." People v Deacon, 226 AD2d 1120, 1120 (4th Dept 1996), citing Vehicle and Traffic Law § 600(1)(b); § 603(1); People v Bennett, 70 NY2d 891, 892-93 (1987). The deputies were permitted to approach the vehicle, observe its condition, approach the front door, and question the defendant in the doorway. See People v Nonni, 141 AD2d 862, 863 (2d Dept 1988), lv denied 72 NY2d 960 (1988), lv denied 73 NY2d 788 (1988); People v Warmuth, 187 AD2d 473, 473-75 (2d Dept 1992), lv denied 81 NY2d 894 (1993); People v Torres, 148 AD3d 613, 614 (1st Dept 2017), lv denied 29 NY3d 1095 (2017); People v Kozlowski, 69 NY2d 761, 763 (1987), rearg denied 69 NY2d 985 (1987); see also People v De Bour, 40 NY2d 210, (1976) ("police officers [*5]legitimately approached [the defendant] to inquire as to his identity," which "encounter . . . was devoid of harassment and intimidation" and "did not subject [the defendant] to the loss of dignity[.]"). "Absent evidence of intent to exclude the public, the entryway to a person's house offers implied permission to approach and knock on the front door." Kozlowski, supra; accord United States v Reyes, 283 F3d 446, 465 (2d Cir 2002); Palmieri v Lynch, 392 F3d 73, 81 (2d Cir 2004); People v Catten, 214 AD2d 463, 463 (1st Dept 1995). The defendant's doorway admissions "w[ere] not the product of an illegal arrest, but rather w[ere] obtained in the course of police investigation and prior to any arrest." People v Thiam, 232 AD2d 199, 199 (1st Dept 1996), lv denied 89 NY2d 930 (1996); see People v Mayerhofer, 283 AD2d 672 (3d Dept 2001). Deputy Houper's request that the defendant step outside to look at the damage to his vehicle, which he agreed to do, was not unlawful. See e.g. People v Keller, 148 AD2d 958, 959 (4th Dept 1989) (police did not enter the home, but instead asked to speak with the defendant on the porch), lv denied 73 NY2d 1017 (1989); People v Richardson, 137 AD2d 105, 108 (3d Dept 1988) ("a warrantless arrest outside of the home is lawful even when a defendant is induced to leave the home by noncoercive subterfuge"); People v Ashcroft, 33 AD3d 429, 429 (1st Dept 2006) ("The police did not violate defendant's Fourth Amendment rights when they reached in and pulled him out as he stood in close proximity to his doorway, since, by his actions, defendant knowingly and voluntarily presented himself for public view"), lv denied 8 NY3d 843 (2007), cert denied 552 US 829 (2007).
"[T]he fact that the defendant may have been a suspect at that time is not, in and of itself, proof that the defendant was in custody. The appropriate test is what a reasonable person, innocent of any crime, would have thought had he been in the accused's position. The factors to be weighed include the amount of time the defendant spent with the police, the manner, if any, in which his freedom was restricted, the location and atmosphere of his questioning, the degree of cooperation which he exhibited, whether he was apprised of his constitutional rights, and whether the questioning was investigatory or accusatory in nature. Generally, the determination of whether an interrogation is custodial is an issue of fact. It has been held that a custodial situation is not created by the fact that a defendant is questioned in a police vehicle." People v Small, 59 Misc 3d 1219(A), 2018 NY Slip Op 50630(U), *3 (Mt. Vernon City Ct 2018) (internal quotation marks and citations omitted). In this case, while the deputies may have had reasonable suspicion that defendant had committed a crime, he was not in custody until he was handcuffed, placed in the back of the patrol car and read his Miranda rights. See Matter of Kwok T., 43 NY2d 213, 218 (1977) ("Lacking probable cause the police may not lawfully place an individual in custody. Nonetheless, to ensure effective law enforcement the police have the right to stop and inquire as to the conduct of an individual whom they have reasonable suspicion to believe has committed a crime.") (citations omitted).
"Recognizing that a probable cause assessment need not rise to the level of evidence to support a conviction or prove a prima facie case," the Court "find[s] that the evidence presented at the Dunaway[/Mapp] hearing was 'collectively of such weight and persuasiveness as to convince a person or ordinary intelligence, judgment and experience that it was reasonably likely that [an] offense [in violation of VTL § 1192] was committed' and that defendant committed it." People v Letendre, 264 AD2d 943, 943 (3d Dept 1999), affd 94 NY2d 939 (2000), quoting CPL § 70.10(2); see Wong Sun, 371 US at 479; People v Malinsky, 15 NY2d 86, 91 (1965), amended 15 NY2d 86 (1965). The information provided by the citizen informant and the witness, which led the deputies "directly to" the defendant, see Wong Sun, 371 US at 480, citing Draper v [*6]United States, 358 US 307 (1959), the corresponding damage on the citizen informant's vehicle and the defendant's vehicle, without accumulation of salt, the fresh tire tracks in the snow, the defendant's admissions that he had been drinking alcohol at a bar and had recently returned in his vehicle, the observations of the deputies that the defendant was unsteady on his feet and had glassy, somewhat red eyes, the smell of alcohol emanating from the defendant as he walked past the deputies and the defendant's failure of at least one field sobriety test provided probable cause to arrest the defendant, at the very least, for impairment. See VTL § 1194(1)(a). Defendant's additional statement that he had driven in the vicinity of the accident, while denying his involvement in the accident, provided additional cause for his arrest. The evidence, taken together, excluded "all inferences other than simultaneous operation and intoxication." People v Spencer, 289 AD2d 877, 879 (3d Dept 2001), lv denied 98 NY2d 655 (2002), quoting People v Saplin, 122 AD2d 498, 499 (3d Dept 1986), lv denied 68 NY2d 817 (1986).
Assuming, without deciding, as the defendant contends, that Deputy Houper failed to properly administer the field sobriety tests, it is of no moment because probable cause to arrest for a VTL § 1192 violation "need not always be premised upon the performance of field sobriety tests or any specific number of tests." People v Wallgren, 94 AD3d 1339, 1341 (3d Dept 2012), quoting People v Kowalski, 291 AD2d 669, 670-71 (3d Dept 2002); accord People v Fenger, 68 AD3d 1441, 1443 (3d Dept 2009) ("A probable cause determination is based on 'the totality of the circumstances'"), quoting People v Mojica, 62 AD3d 100, 114 (3d Dept 2009), lv denied 12 NY3d 856 (2009). Further, even if the defendant's inability to perform the tests had an innocent explanation—i.e., physical disability—an officer is not required to eliminate all possible innocent behavior prior to arrest; "[p]robable cause does not require proof to a mathematical certainty." People v Mercado, 68 NY2d 874, 877 (1986). "The failure to establish that the tests had been properly administered does not in and of itself necessarily diminish the strength of the remaining proof of the existence of probable cause," which proof the Court finds compelling in this case. People v Hillman, 71 Misc 3d 127(A), 2021 NY Slip Op 50233(U), *2 (App Term, 2d Dept, 9th & 10th Jud Dists 2021). Finally, "[w]hile defendant may offer [an] innocent explanation[] ..., that does not prevent the police from acting on their well-founded conclusions." People v Daye, 194 AD2d 339, 340 (1st Dept 1993). In sum, the deputies in this case acted reasonably—with probable cause, and not whimsically. See De Bour, 40 NY2d at 220.
The Court addresses a few other points raised by the defendant. Although the defendant maintains otherwise, the People are not required to produce a 911 tape, body camera footage, the photograph taken by the citizen informant or any other additional evidence at a suppression hearing, provided the evidence that is produced satisfies the People's burden. See People v Tillman, 57 AD3d 1021, 1023 (3d Dept 2008); People v Ginther, 42 Misc 3d 664, 670 (Sup Ct, Richmond County 2013). The defendant contends that the failure to offer evidence of the names of the citizen informant and witness at the hearing is fatal. The Court disagrees. First, the name of the citizen informant was given at the hearing. More important, the names of known individuals who have provided written statements to police are "irrelevant on the issue of probable cause." People v Crawford, 162 AD2d 1028, 1029 (4th Dept 1990), lv denied 76 NY2d 854 (1990). Finally, evidence of a positive portable breath test (PBT) is not a prerequisite for the admissibility of a breathalyzer chemical test. People v Thomas, 121 AD2d 73, 77 (4th Dept 1986) (the argument that "failure of a [preliminary breath] screening test is . . . required to establish a foundation for the breathalyzer test . . . is simply not the case"), affd 70 NY2d 823 (1987). A chemical test is also warranted where there is "reasonable grounds to believe [the [*7]defendant] . . . ha[s] . . . violat[ed] of any subdivision of [VTL § 1192]." VTL § 1194(2)(a)(1). Either scenario—a positive PBT or reasonable cause to believe the defendant has committed VTL § 1192 violation—authorizes a police officer to seek consent to chemical testing. The statutory requirement for chemical testing having been met, the results will not be suppressed. See Odum, 31 NY3d at 350.

 Conclusion
The People satisfied their burden of proving beyond a reasonable doubt that the defendant's statements were voluntarily given and not the product of custodial interrogation. The People also put forward credible evidence demonstrating that deputies acted lawfully and had probable cause to arrest the defendant. The defendant failed to prove by a preponderance of the evidence that the deputies acted unlawfully. Accordingly, the motion to suppress must be denied.
It is therefore ORDERED that the motion to suppress the defendant's statements is denied; and it is further
ORDERED that the motion to suppress evidence on the ground that the deputies acted illegally or without probable cause to arrest is denied.
The foregoing constitutes the opinion, decision and Order of this Court.